Lord v. High Voltage Software Ms. Scaria, welcome to come up and put your microphone where you need it. May I approach? Please. Ms. Scaria. Thank you. Good morning. May it please the Court, Council, and those in attendance. My name is Laura Scaria and I represent Brian Lord, the plaintiff appellant in this appeal. Plaintiff is appealing the District Court's grant of summary judgment in favor of the defendant on plaintiff's second sexual harassment claim in count one. And plaintiff claimed that he was retaliated against for reporting harassment to the Defendant's Director of Human Resources and stating that he was this close to reporting his claim to the EEOC and IDHR. That is in count three. Plaintiff believes that he has presented sufficient evidence from which a jury could properly conclude that Mr. Rimer was a victim of a patient case of same-sex sexual harassment and that his termination was because he engaged in conduct protected under Title VII. As a result, this Court should reverse the District Court's granting of summary judgment in favor of the defendant. How do we characterize the incidents with Rimer as to be so severe and pervasive that as to constitute sexual harassment? Well, that question, I think, can be easily answered based on the evidence of the Defendant's own Director of Human Resources. In addition, the reason why we believe that the claimant... So why, so in other words, we don't have to have hearings. We just can follow what someone in the corporation thought. Well, if I understand your question, I'm having a hard time hearing your question. That's okay. It's just because of the sound system. If I understand your question, the reason why we believe that the plaintiff had at least presented an inference that the conduct was severe and pervasive is based on the fact that the termination letter for Mr. Lord's harasser, that is Nick Rimer, that termination letter, which was drafted by the Director of Human Resources, stated that Mr. Lord was the subject, or he was subjected to sexual harassment. And then it went on to list the four incidents in which they believed that Mr. Lord was subject to the harassment. Not only that, but the deposition testimony of the Director of Human Resources, Maggie Boland, she testified in her deposition that Lord was sexually harassed. I ask this question, so then am I correct that you and Mr. Capecchi believe that Mr. Rimer had violated HBS's policy regarding sexual harassment? Answer. If an employee felt that they were touched inappropriately, yes, he did. Then I ask a follow-up question. At any rate, though, in response to your investigation of Mr. Rimer, you would agree that Mr. Lord was the victim of sexual harassment by Mr. Rimer, correct? Answer. He reported that he was sexually harassed by Nick Rimer. And then I ask this last follow-up question. And you found that Mr. Rimer had indeed engaged in sexual harassment of Mr. Lord, correct? Answer. Now, you don't argue that Rimer touched him because of his gender or that Rimer is homosexual or bisexual, you don't argue any of that, right? Answer. Well, I don't argue that the facts of this case fit neatly in the three methods that the Supreme Court in the Ancali case established, but there is an argument that can be made, and based on the Supreme Court's own opinion, they say that those three methods of, for lack of a better term, proof, are not exhaustive. Indeed, Judge Zagel, in his opinion, stated that those were not exhaustive. So you see, my problem is that the employer appears to deem any unwanted touching as sexual harassment, but that's not the legal definition for Title VII purposes. I'm sorry, that's not what? That's not the legal definition for Title VII purposes. I mean... No, I agree with that, Your Honor, but the court, this court has said, and I'm citing to the Kidwell v. Eisenhower case, that it is generally for an employer to interpret its own policies. So if, in interpreting the policy, when they terminate Nick Reamer, and they say that Nick Reamer engaged in sexual harassment against Ryan Lord, then I think that satisfies the severe and pervasiveness or the objective reasonableness standard to establish severe and pervasive conduct. So in other words, if an employer thought that if one man kissed another man on the top of his head, if the employer thought that was sexual harassment, that would be enough? Well, I think it would be enough to go to a jury. If an employer or somebody outside of the victim believed that he was subject to harassment, because we know that in order to establish sexual harassment, it needs to be subjectively reasonable as well as objectively reasonable. So if the victim believes that he's subjectively a victim of harassment, and then we've got somebody else, the employer, saying that he was a victim of harassment, I think that's enough to establish an inference that the conduct was severe and pervasive and equated to sexual harassment. So based on that, that is the reason why we believe that the district court had erroneously granted summary judgment in favor of HBS regarding the plaintiff's claim of same-sex sexual harassment. The audio bug joke doesn't fall in that category, right? Of sexual harassment? Well, it's certainly not same-sex sexual harassment. And it's really not sexual harassment at all. He's just being teased. He is being teased. However, my client, he believed that he was harassed. He believed that it was based on his sex. With respect to the audio bug joke, it referred to the plaintiff getting, forgive my language, but getting a blow job, and it pertained to his attraction to another coworker. So he told his harassers, who, by the way, was his immediate supervisor, as well as the, for lack of a better term, a managerial supervisor, that he wanted the conduct to stop. However, that conduct did not stop. And so on that basis, he's claiming that he was a victim of sexual harassment. I believe I'm into my two-minute rebuttal, so I'd like to go ahead and finish. Certainly, counsel. Mr. Madden. Good morning, Your Honor. Counsel, may it please the court. Title VII is not... Title VII protects against discrimination based on sex. It does not protect against juvenile behavior. It does not serve as a weapon for an employee to advance its own position and secure its own position. Plaintiff's claims fail at each of the steps because they show only a consistent pattern of an employee who wanted to manipulate a claim for his own advancement. Doing so retroactively after he had been a victim of harassment. Could we zero in on this retaliation claim, please? Because in terminating Lord for failing to report the harassment in a timely manner, doesn't the company set up a situation in which an employee who doesn't report harassment immediately is faced with possible discharge if he later seeks to stop the harassment? In other words, even in an ongoing situation of harassment, an employee would be loath to mention earlier incidents because of the risk of losing his or her job for failure to timely report. And wouldn't that alone create a strong disincentive against reporting harassment that would be, you know, it's antithetical to the provisions of Title VII? I disagree, Judge. In fact, the position we take is that it's a policy that encourages reporting. First of all, this was a directive, a personnel directive given to Mr. Lord because he had abused it in the first place with the audio bug report. He had waited for months after months. The harassment had stopped in March. He had waited until July. In fact, he wasn't even the one who initially brought that attention, brought the issue to the attention of the Human Resources Office Manager, Maggie Boland. She's the one who spotted it in an email that Mr. Lord had never sent. So she's actually doing the due diligence on that and following up, and then he seizes on that opportunity. So the personal directive that is given to Mr. Lord is a consequence of his own previous conduct in manipulating the affairs. Now, Hill, Dyson, and other cases tell us that context matters in these cases, right? The work environment matters. By telling Mr. Lord, specifically in June, hey, this is a creative environment full of creative individuals. You need to be more affirmative in how you object to them. If this is something that bothered you, you needed to let us know. And you're directed to let us know immediately. They told him that three times. This is a policy trying to help him in the workplace. Not trying to trap him in the workplace, trying to help him in the workplace. Come to us when you have a problem. Don't wait until we have the feeling that you're manipulating the timing of this so to protect your own job. If the employer, Title VII doesn't mandate a particular protocol for harassment policies, it leaves it up to the employer to figure out what's best for its work environment. If the employer wants to assume those added responsibilities of potentially getting charge after charge, or claim after claim after claim, or notice after notice after notice, it's free to do that. I would note that in their existing sexual harassment policy, it does say you have an obligation as an employee to report these incidents. Everybody does. Just generally. And the thing that made Mr. Lord's circumstance so different is that he breached it the first time. There was a sense that he was doing it to protect his own job. He had waited months to do so. And so they gave him a clear directive for the next time. And he breached it again. That's a totally legitimate reaction by the employers when he has manipulated the situation twice. He's violated that specific directive to come tell us immediately. Maggie Villon testified quite plainly. If he comes to us on the 18th after Nick Reamer touches him the first time, he's got no problem. If he comes to us on the 19th, he's got no problem. But he waits on it. And he waits on it, and he waits on it until what? Until Nick Reamer comes in and tells Ryan Lord that he's getting a promotion and Ryan Lord is going to make this complaint. But not to Chad Catt, who he's directed to do. Not initially to his supervisor. He simply goes in, interviews his own witnesses, and then approaches Maggie Villon and makes the claim. A couple of points I want to make in response to counsel's argument earlier. Counsel's suggestion that policies is somehow a binding determination as to the law I think is incorrect. The company policy is not Title VII law. The standards that Maggie Villon is using are different than Title VII. In her discipline notice to Mr. Reamer, she cites Section 113 of the policy, which is the general employment conduct policies. This is the bullet point list of no fighting, no drug use, no alcohol use, those types of things. Section 150, the section that she doesn't cite to, is the actual sexual harassment policy. And it defines in there sexual harassment is conduct that is demeaning to another person. She's using a standard that is not the Title VII standard. But in order to be protected activity, it has to be protected activity that a plaintiff cannot show that. Also, counsel suggested to your honors that Ryan Lord did believe that he was being, and this was in regard to Judge Sykes' question on the audiobooks, did believe that he was being teased based on his sex. There's no evidence in the record of that. The evidence in the record is that he never believed that Van Bell or Cawood or any of those guys who made the audiobook joke were doing so because he was male. He was being teased because he was giving undue attention to the new female employee in the audio department. They crafted a clever joke based on the work that they do. There is no evidence in the record that he ever suggested that. The connotations about oral sex in what the audiobook joke meant are entirely inventions enlisted in Mr. Lord's mind. There's not a single piece of evidence that suggests that any of those connotations were made as part of that joke. He's invented it in his own mind. That is not evidence that he believed that he was being discriminated based on his sex. Counsel also seeks to take issue with the methods of on-call in which a plaintiff could establish that same-sex conduct was because of sex. She admits that she can't meet any of the three methods the Supreme Court articulates and suggests that perhaps there should be others but still fails to articulate what those other standards would be or how there is any evidence in this case to meet them. The simple direct answer is that this is juvenile horseplay. The cases are complete in this circuit from the United States Supreme Court. Juvenile horseplay is not because of sex. The plaintiff cannot meet that standard. Because he cannot meet that standard, no reasonable person could believe that this conduct was based on his sex, was conduct made unlawful by Title VII. It is not protected activity. Without protected activity, there can be no retaliation. If there are no further questions from the court, we submit that Judge Ziegel's opinion was firmly grounded in the law and should be affirmed on all counts. Thank you, Mr. Madden. Anything further, Ms. Gary? Yes. Just briefly, counsel for the defendant indicated that the defendant has a policy of encouraging the reporting of sexual harassment. That's true. They do have a policy of it. But they do not in reality practice or encourage the reporting of sexual harassment. The first time Mr. Lord had reported that he was sexually harassed, after the defendant found in their opinion that he had not been subjected to sexual harassment, he had been chastised by two of his supervisors that if you bring up or complain to the company, it could result in your termination. Also, this is a fun place to work. And because it's a fun place to work, you need to make sure whether or not it's a joke or not. I would submit, the plaintiff submits, that four slaps on the buttocks and then groping between the individual's legs is not playful behavior. It's not. And because the plaintiff had been chastised prior to reporting the physical assaults that he suffered at the hands of a coworker, he needed to be sure that he was a victim of sexual harassment. After the fourth time, and by the way, we're only talking about a nine day span of time. And because of that, once Mr. Lord had realized, you know what, I am a victim of sexual harassment, that was on a Friday. He thought more of it over the weekend. And as soon as Monday came around the corner, he went to his office and reported that he'd been a victim of sexual harassment. And based on the fact that he reported the sexual harassment, within 48 hours, he was terminated. And then within 24 hours of saying that he was this close to reporting the sexual harassment to the way, or at least the plaintiff has presented an inference that his termination was based on his reporting that he'd been a victim of sexual harassment. The case is taken under advisement and the court will be in recess.